UNITED STATES *v.* J. EISENBERG, INC. (No. 4849) [1]

United States Court of Customs and Patent Appeals, April 18, 1956

*George S. Leonard,* Acting Assistant Attorney General and *Richard E. Fitz-Gibbon,* Chief, Customs Section, for the United States.

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument October 4, 1955, by Mr. FitzGibbon and Mr. Jordan; reargued February 7, 1956, by Mr. FitzGibbon and Mr. Jordan]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges [Original argument before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Associate Judges]

WORLEY, Judge, delivered the opinion of the court:

[1] C. A. D. 616.

This is an appeal from the judgment of the United States Customs Court, First Division, one judge dissenting, Abstract 59106, sustaining a protest by the importer, appellee here, overruling the collector's classification of the involved merchandise as "wool rags" under paragraph 1105 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and holding it properly dutiable as "Waste, not specially provided for" under paragraph 1555 of that Act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739.

The initial argument in this case was heard on October 4, 1955, and a reargument at the suggestion of the court, prior to its decision herein, was held on February 7, 1956 at which time no additional briefs were filed.

It is contended by the Government that the collector's classification was proper, or alternatively, the goods should be classified as "wool wastes not specially provided for," under paragraph 1105 (a), as modified by the Torquay Protocol, *supra*.

The pertinent portions of the paragraphs cited above, as modified are as follows:

Paragraph 1105 (a)

Wool and hair wastes:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Wool wastes not specially provided for_____ 9¢ per lb.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Wool rags_____ 9¢ per lb.

Paragraph 1555

Waste, not specially provided for_____ 4% ad val.

The merchandise is described in a stipulation between counsel for the respective parties, the pertinent portions of which are as follows:

2—That the merchandise included in the invoice covered by Protest No. 223866–K/11409-53, consists of waste pieces of knitted wool fabric, known as "clips," the same in all material respects as merchandise represented by defendant's exhibit 2 in *Mattoon & Co., Inc., ᴛa/c Philip Senegram Co.)* v. *United States,* Suit No. 4782, C. A. D. 563.

3—That the merchandise included in the invoice covered by Protest No. 229833-K/17905-53, consists of waste pieces of knitted wool fabric, known as "seamers" or "noodles," the same in all material respects as the merchandise represented by defendant's exhibit 1 in the said C. A. D. 563.

5—That the involved merchandise, referred to in paragraphs 2 and 3 above, after importation, is used chiefly in the woolen industry for remanufacture into yarn and ultimately cloth; and that to prepare it for such use it must be subjected to a picking or shredding process, and is usually subjected to a garnetting process, to convert it into wool shoddy, a fibrous mass.

As stipulated, the merchandise here is the same in all material respects as that before us in *Mattoon & Co., Inc., (a/c Philip Senegram Co.)* v. *United States,* 42 C. C. P. A. (Customs) 19, C. A. D. 563,

where it was held to be dutiable not as "Wool rags" but as "Waste, not specially provided for." This appeal, in effect, involves a reargument of the issues decided in the *Mattoon* case.

The following definitions of the word "rag" are noted:

Webster's New International Dictionary—1949

Rag 1. a A waste piece of cloth torn or cut off; a tattered piece of cloth, a shred; tatter. * * *

New Standard Dictionary—1916

Rag, n. 1. A fragment of cloth torn or partly torn from its original connection; especially a worn, frayed, or torn bit of a garment; * * *.

A New English Dictionary on Historical Principles (Oxford Dictionary), 1914, Vol. VIII, Page 105—

Rag. 1. A small worthless fragment or shred of some woven material; *esp.* one of the irregular scraps into which a piece of such material is reduced by wear and tear.

Century Dictionary and Cyclopedia, 1911, Vol. VIII, page 4937—

Rag. 4. A torn, worn or formless fragment or shred of cloth; a comparatively worthless piece of any textile fabric, either wholly or partly detached from its connection by violence or abrasion.

While the quoted definitions indicate that the word "rag" is commonly applied to a worn and torn piece of cloth, they are all broad enough to include pieces of new, as well as old, cloth. No contention is made that merely because the instant merchandise is new, it would be precluded classification as rags. It is urged, however, *inter alia*, that such merchandise is not dutiable as rags because the fragments were not obtained by tearing, but by a cutting operation which was part of a manufacturing process. A similar contention was sustained by this court in the *Mattoon* case, *supra*, and in *United States* v. *Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386.

The record of the *Mattoon* case, which has been incorporated into the record of the instant case, contains conflicting opinion testimony as to whether the fragments are rags.

While the New Standard Dictionary does not expressly define a "rag" as being cut, we think such a process is contemplated by the language "torn or *partly* torn." (Italics ours.) In any event, the other definitions quoted are clearly broad enough to include cut fragments. Webster's New International Dictionary specifically mentions cutting. So far as commercial use of fragments of cloth is concerned, it would seem to be immaterial whether they were separated from the original piece by tearing or cutting, and there is no reason to suppose that Congress, by the use of the word "rags," intended to make any distinction in that respect.

On the contrary, the legislative history of the Act clearly suggests that no such distinction was intended. Thus in *P. Silverman & Son*

v. *United States*, 32 C. C. P. A. (Customs) 99, C. A. D. 292, at page 105, the court quoted portions of the Summary of Tariff Information, 1929, Vol. 2, p. 1688, which "was before the Ways and Means Committee of the House when the Tariff Act of 1930 was being prepared." It is too well settled to require citation that such summaries have been recognized by this court as authoritative for the purpose of resolving questions relating to the meaning and scope of terms which appear in the various tariff acts, and in determining the intent of Congress. The above portion of the Summary of Tariff Information at page 105 of the *Silverman* case, *supra*, contains the following language:

\*       \*       \*       \*       \*       \*       \*

Woolen rags, the term used in the tariff act, include wool rags containing either worsted or woolen yarns. Wool rags vary widely in quality and in price. Old wool rags known as "knits" are obtained from discarded clothing wholly or in part of wool, such as suits, dresses, sweaters, and stockings. *New wool rags known as "clips" are clippings from the cutting tables of ready-made suit and cloak houses, tailor shops, etc.* Wool rags are usually reduced to the state of shoddy and the reclaimed wool fibers are largely used in woolen manufacture. Rags that are too inferior for such use are utilized in roofing felts. (Italics ours.)

In stipulations 2 and 5 above, it is stated:

2—That the merchandise \* \* \* consists of waste pieces of knitted wool fabric, known as "clips," the same in all material respects as the merchandise represented by defendant's exhibit 2 in *Mattoon & Co., Inc.*, (a/c *Philip Senegram Co.*) v. *United States*, Suit No. 4782, [42 C. C. P. A. (Customs) 19] C. A. D. 563.

\*       \*       \*       \*       \*       \*       \*

5—That the involved merchandise, referred to in paragraphs 2 and 3 above, after importation, is used chiefly in the woolen industry for remanufacture into yarn and ultimately cloth; and that to prepare it for such use it must be subjected to a picking or shredding process, and is usually subjected to a garnetting process, to convert it into wool shoddy, a fibrous mass.

Since the term "Wool rags," appearing in paragraph 1105 (a) of the Tariff Act of 1930, is defined in the Summary of Tariff Information, *supra*, as including wool "clips," and since it is stipulated here that one portion of the imported merchandise consists of wool "clips," we see no alternative than to hold that such portion of the instant merchandise was properly classified by the collector under paragraph 1105 (a), *supra*, as "Wool rags."

The merchandise here is of two kinds, "clips" and "noodles," but it is not argued by either party that there is any significant tariff distinction between the two so far as the issues here are concerned. It is stipulated that the "clips" and "noodles" are the same in all material respects as the corresponding merchandise in the *Mattoon* case, *supra*, where "noodles" were described as "very narrow pieces or strips which are the 'offal' of the trimming of the garment upon manufacture." They are thus similar in origin to the clips and, for the reasons given above, we think that they also were properly classified by the collector as rags.

It is to be further noted that the stipulation in paragraph 5, *supra*, states that the imported merchandise is converted into shoddy, which is in turn used for manufacturing cloth. In that respect, it is to be observed that the Summary of Tariff Information advises that "Wool rags are usually reduced to the state of shoddy and the reclaimed wool fibers are largely used in woolen manufacture." It thus appears that the imported merchandise was the specific type of goods which the framers of the statute had in mind as "Wool rags," and to decide otherwise would be directly contrary to the intent of Congress.

The decision of the United States District Court for the Southern District of New York in *United States* v. *Pearson and Emmot*, 131 Fed. 571, affirmed 137 Fed. 1021, cited by the United States Customs Court in its decision in the *Mattoon* case (C. D. 1525), is in point here. In that case the court said:

> The articles in question comprise the portions of woolen material clipped from the piece in the course of making up garments. * * * They are rags in the dictionary and popular signification and are commercially dealt in as rags by rag dealers.

Since the fragments here are rags, and since it has been stipulated that they consist of waste pieces of knitted wool and are used chiefly in the woolen industry for remanufacture into yarn and cloth, it is evident that their proper classification is as wool rags under paragraph 1105 (a), *supra*. There is nothing in the two *Silverman* cases, cited by the parties, *P. Silverman & Son* v. *United States*, 27 C. C. P. A. (Customs) 324, C. A. D. 107, and *P. Silverman & Son* v. *United States, supra*, which would negative such a classification.

The first case was concerned with materials which could not be reused in the woolen industry, hence is not pertinent here. In the latter case it was held that a material which could be used in the woolen industry only after shredding could not be classified as "Wool waste not specially provided for" under paragraph 1105 of the Tariff Act of 1930. That decision was based on the relative rates of duty imposed by the paragraph on wastes of various types, thus the reasoning in that case is not applicable to wool rags, and no holding was made as to the meaning of "wool" in the classification "Wool rags" in paragraph 1105, as modified, *supra*.

For the reasons given, we conclude that the instant merchandise is properly classifiable as "Wool rags" under paragraph 1105 (a), *supra*. Therefore, the decisions in the *Mattoon* and *Lobsitz* cases, *supra*, are hereby overruled so far as they are inconsistent with the instant decision. Accordingly, the judgment of the Customs Court is *reversed*.

O'CONNELL, Judge, was present at the argument of this case but by reason of illness did not participate in the decision.

Cole, Judge, dissenting.

I am unable to agree with the decision of the majority in this case. I wish to emphasize first that there is nothing before us in this case which has not been fully considered in the previous cases. The majority relies upon certain dictionary definitions (apparently to establish that the common meaning of the word "rags" includes the items involved here), and upon quotations from the Summary of Tariff Information, 1929 to establish that Congress intended to include such merchandise within the meaning of the word "rags." The same dictionary definitions relied upon by the majority here were before us in the *Lobsitz* and the *Mattoon* cases (cited in the majority opinion), and, in fact, they were quoted in the *Mattoon* case. Likewise, the quotation from the Summary of Tariff Information was fully argued in the briefs in both the *Mattoon* and *Lobsitz* cases.

Nor does the stipulation herein make this case any different than the *Mattoon* case since the stipulation merely reiterates what was established as fact in the *Mattoon* case, and indeed follows closely the terminology used in the decisions. For all practical purposes this case is merely a rehearing of the *Mattoon* case. We denied a petition for rehearing in that case. It is my opinion that since the facts presented in this case are exactly the same as in the *Mattoon* case, and since no new arguments have been developed, that the decision below should have been affirmed on that authority without opinion.

I feel it only appropriate to point out that the majority here has expressed an interpretation of the *Mattoon* case which does not agree with my understanding thereof. The majority professes to believe that the *Mattoon* case turned on a distinction between cutting and tearing; I did not so understand the case. It was my understanding that the decision turned upon the nature and physical appearance of the exhibits involved therein, and upon a holding of this court that the common meaning of the word "rags" did not include such merchandise. I understood the court to hold that the fact that the involved merchandise could be used for reprocessing in the same way that rags properly so-called could be used, did not make the merchandise rags. A description of the involved merchandise will illustrate this point. The "noodles" are apparently so named because of their resemblance to the food preparation of that name. They are generally several inches in length, and rarely more than a fraction of an inch in width. Chief Judge Oliver, whose dissenting opinion in the *Mattoon* case was approved by this court, aptly described them as "largely resembling pieces of string." The "clips" are somewhat larger pieces than the noodles, but the largest is still smaller than the palm of a hand. They would scarcely make satisfactory pen wipers.

It is clearly apparent that such material could be termed "rags" only under an extremely broad definition of that term. It is evident that

the normal usage of the word "rags" excludes merchandise of the type involved here, not because the items have been cut instead of torn, but because the word "rag" is generally used to refer to something more substantial  A housewife would not find the involved merchandise suitable as dust rags, nor a mechanic as wiping rags.  In a broad general sense, perhaps these items are rags, but properly and normally speaking they are not.  Although the evidence is somewhat conflicting, it appears that in trade the goods are not dealt in as "rags" but under the more specific designation as "clips" or "noodles," and this court so held in the *Mattoon* case.  I understood the *Mattoon* case, as well as the *Lobsitz* case (where felt "clips" were involved), to hold that the term "rags" was not used in a general sense in paragraph 1105 but in its common meaning, which excludes merchandise as insubstantial as that involved here.  Such being the case, reference to the Summary of Tariff Information was not permissible.

Whatever might have been the merits of the question upon first impression, it is my belief that the well-reasoned and heretofore followed decisions of this court as to the common meaning of the word "rags," made after full argument and consideration of all the facts involved, should stand in the absence of exceptional circumstances not present here.  The language of *Burstein & Sussman* v. *United States*, 16 Ct. Cust. Appls. 282, 285, T. D. 42871, is particularly applicable here:

We know of no situation, however, which calls more forcibly for the application of the maxim of stare decisis, et non quieta movere.  We are fully cognizant of the limitations placed upon this maxim in giving it controlling force in the decision of cases by the courts of the country, but if the rule is to be given any force whatever and is to be regarded as controlling in the decision of any kind of case, it certainly ought to be observed and followed here, and we so hold.

To now resort to extrinsic evidence of congressional intent to contradict this court's interpretation of the common meaning of a tariff term—which evidence was carefully considered by our court in the past—is going to an extreme I cannot accept.  I find no alternative but to dissent from the majority opinion.